HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURA F. AVERY, individually, | Case No. C06-5655 RBL |
| Plaintiff, | |
| v. | ORDER |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

This matter comes before the Court on the parties' cross-motions for Summary Judgment. Specifically, Defendant moves for dismissal, arguing that the Court lacks subject matter jurisdiction over Plaintiff's claims;[1] Plaintiff moves for partial summary judgment on the issues of causation and special damages. The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein. Because the Court agrees that it does not have jurisdiction over Plaintiff's claims, the Court will not address Plaintiff's Motion for Partial Summary Judgment (Dkt. #15) or Defendant's Motion for Relief From Mediation (Dkt. #22) at this time.

---

[1] Although Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56, the Court notes that Defendant's motion is more properly addressed as a motion to dismiss under Fed. R. Civ. P. 12(b)(1).

# I.  BACKGROUND

The following facts are not in dispute.  Plaintiff in this personal injury action, Laura F. Avery, was a civilian employee of the United States Army.   From October 2002 until March 2005, Ms. Avery's duty station was located at Camp ZAMA, Japan, where she worked as the Director of Resource Management [Dkt. #18, p. 14].  On February 9, 2005, Ms. Avery requested a temporary duty assignment in Atlanta, Georgia, for the purpose of attending a business conference [*Id*.].  Ms. Avery departed for Atlanta on February 13, 2005 [*Id*.]

At the conclusion of the conference (Wednesday, February 16, 2005) Ms. Avery left Atlanta and flew to Seattle, Washington, for personal reasons (Ms. Avery had accepted a position at Fort Lewis, Washington, prior to her departure for the conference) [Avery Dep. at 69].  Ms. Avery requested eight hours of leave for Friday, February 18, 2005, in order to purchase a car, relax, and visit her significant other.  She was off-duty throughout the weekend of February 19-20, 2005 [Dkt. #18, p. 15].  Ms. Avery did not request compensation for meals or accommodations during her Washington stay and was required to pay the difference in airfare resulting from the Seattle excursion [Dkt. #19-5, pp. 44-45].

On February 20, 2005, Ms. Avery traveled to the Seattle/Tacoma International Airport ("SeaTac") for the purpose of returning to Camp ZAMA.  At approximately 12:30 p.m., prior to boarding her flight, Ms. Avery was injured during a security screening conducted by Transportation Security Administration (TSA) personnel.  Because she considered herself off-duty at the time, Ms. Avery did not submit a Federal Employees' Compensation Act ("FECA") claim.  Instead, Ms. Avery filed the present action in this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, 28 U.S.C. § 1346(b).

# II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess "only that power authorized by

Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) Thus, the party seeking to invoke the jurisdiction of the federal courts has the burden to establish that subject matter jurisdiction is proper. *Id.* (citations omitted).

The standard for granting a motion to dismiss for lack of subject matter jurisdiction varies depending upon the nature of the jurisdictional challenge. Where the jurisdictional attack is facial – i.e., where the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction – the plaintiff is entitled to the safeguards found in a Fed. R. Civ. P. 12(b)(6) motion. Thus, the factual allegations in the complaint are taken as true, and the motion will be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)).

Where an attack on the existence of subject matter jurisdiction is made in fact, a district court may hear and weigh evidence with respect to jurisdiction, so long as the jurisdictional facts are not intertwined with the merits of the case. *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In such circumstances, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). Because the instant action involves an attack on subject matter jurisdiction in fact and does not involve facts intertwined with the merits of Ms. Avery's case, it is this latter standard that applies to the government's present motion to dismiss.

## III.  DISCUSSION

**A.      FECA Preemption**

FECA compensates federal employees for injuries sustained "during the performance of their duties." *Figueroa v. United States*, 7 F.3d 1405, 1407 (9th Cir. 1993); 5 U.S.C. § 8116(c).  FECA's remedies "are exclusive of all other remedies against the United States for job-related injury or death."[1]  *Id*.  Thus, "an injured federal employee may not bring an action under the FTCA if there is a substantial question as to whether [her] injuries are covered under FECA." *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977).  Instead, an employee must seek and be denied relief by the Secretary of Labor before commencing an action under the FTCA.  *Id*.

The inquiry into whether a "substantial question" of FECA coverage exists is two-pronged: The Court must determine 1) whether the plaintiff's injury lies within the *scope* of FECA coverage, and 2) whether the plaintiff is entitled to FECA compensation under the *facts* of a particular event. *Figueroa*, 7 F.3d at 1407 (quoting *Sheehan v. United States*, 896 F.2d 1168, 1174 (9th Cir.), *modified*, 917 F.2d 424 (9th Cir. 1990)).  The latter question, if raised, "must be deferred to, and answered by, the Secretary of Labor." *Moe v. United States*, 326 F.3d 1065, 1068 (9th Cir. 2003). Thus, the events surrounding a plaintiff's injury need only present a "colorable" FECA claim for federal courts to lack subject matter jurisdiction.[2]  *Id*.  Because the government does not dispute that Ms. Avery's injuries fall within the scope of FECA, the parties' focus at this stage centers upon the latter question: Whether Ms. Avery was arguably within the performance of her duties when she entered the security queue at SeaTac airport on February 20, 2005.

---

[1] The exclusivity of FECA was added by Congress in 1949 "to obviate multiple recoveries by injured employees and excessive costs to the United States due to the passage of the FTCA." *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977) (quoting *Galimi v. Jetco, Inc.*, 514 F.2d 949, 952-53 (2nd Cir. 1975)).

[2] This highly deferential standard has been described by other courts in no uncertain terms: "A substantial question exists unless it is *certain* that the Secretary would deny coverage under the act." *Ritchie v. United States*, 210 F.Supp. 2d 1120, 1124 (N.D. Cal. 2002) (emphasis added), *accord Bruni v. United States*, 964 F.2d 76, 79 (1st Cir. 1992); *DiPippa v. United States*, 687 F.2d 14,16 (3rd Cir. 1982); *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998).

Both parties cite to *Ritchie v. United States* as guidance in determining what constitutes the "performance of duty":

> A plaintiff's injuries arise in the performance of his duties if related to the special zone of danger created by an obligation or condition of employment. To make this determination, the court must consider whether under all the circumstances a causal relationship exists between the employment itself, or the conditions under which it is to be performed, and the resultant injury.

*Ritchie v. United States*, 210 F.Supp. 2d 1120, 1124 (N.D. Cal. 2002) (internal citations and quotation marks omitted). Additionally, the parties agree that this Court may look to prior decisions of the Department of Labor for guidance [*See* Dkt. #16, p. 5; Dkt. #18, p. 4].

After a thorough review of ECAB opinions analogous to the present action, it is evident that an employee on travel status is engaged in the "performance of duty." The ECAB has consistently held that FECA's protections cover a federal employee twenty-four hours a day while the employee is on travel status and is engaged in activities essential or incidental to travel status duties. *See, e.g., Ford v. Dept. of the Navy*, 2005 WL 2000546 (E.C.A.B.); *Bowling v. United States Postal Service*, 2005 WL 857621 (E.C.A.B.); *Payombari v. Dept. of Justice*, 2002 WL 32102337 (E.C.A.B.). Under the totality of the circumstances, the Court is satisfied that Ms. Avery was on "travel status." While Ms. Avery may have diverted from this status during her trip to Washington (see discussion *supra*), the underlying purpose for her trip to the United States was to attend the Atlanta conference. Thus, Ms. Avery's argument that she does not fall within FECA's ambit simply because her injury occurred off-premises and outside of her regular working hours is not persuasive.[3]

---

[3] The authority cited by Ms. Avery in support of this argument, *Gabriel v. Dept. of the Air Force*, 1998 WL 1667416, is similarly unavailing as it addresses *commuting* employees. Unlike the employee in *Gabriel*, Ms. Avery was not "going to or coming from" her work station in any normal commuting sense.

However, where an employee deviates from the normal incidents of a trip and engages in personal activities not reasonably incidental to the duties of the temporary assignment, the employee ceases to be under the protection of FECA, and any injury occurring during such deviations is not compensable. *See id*. Presumably because it seems beyond dispute that Ms. Avery deviated from the "normal incidents" of her trip by diverting to the Seattle/Tacoma area following the Atlanta conference, the government argues that Ms. Avery's detour effectively ended (and FECA's coverage immediately re-attached) the moment she left for SeaTac to begin the journey back to her duty station at Camp ZAMA. In other words, because returning to her duty station was an obligation of employment, any injury sustained by Ms. Avery in satisfaction of that obligation should be viewed as causally related to the "zone of danger" incidental to the performance of her duties.

Ms. Avery responds to this argument by asserting that her personal diversion from the business trip was not terminated merely because she was returning to her duty station. While acknowledging that her purpose for traveling on the day of the injury was solely to return to Camp ZAMA, Ms. Avery argues that her travel status for the conference gave way to a personal, off-duty vacation that lasted from February 18-20, 2005. Alternatively, Ms. Avery asserts that, even if she would be covered by FECA prior to her actual return to Camp ZAMA, her diversion was not complete at the time she was injured.

In support of her arguments, Ms. Avery cites to a number of ECAB decisions dealing with various federal employees and their assorted frolics and detours. After digesting an abundant supply of these opinions, including a number not cited by the parties, the Court is highly skeptical of Ms. Avery's prospects at the administrative level.

To begin with, it appears that the ECAB is highly adept at splitting hairs with the above-cited "deviations" rule in a manner that excludes employees from coverage. For example, the employee in

*Haubner v. Social Security Administration*, 2005 WL 3740679 (E.C.A.B.), was on "travel status" and therefore generally covered when traveling to and from dining establishments during his trip. However, the Board found that the employee was engaged in a "personal activity" and was not entitled to compensation for injuries sustained while employee was en route to a restaurant because the establishment was ten miles from where the employee conducted his business and the employee was to have dinner with his father. *Id*. In the instant case, Ms. Avery was thousands of miles away from where she could reasonably have been expected to conduct business and was unquestionably engaged in a personal activity.

The fact that Ms. Avery was returning to her duty station after her diversion is apparently also not determinative. In *Cokerham v. Dept. of the Air Force*, 1998 WL 1666889 (E.C.A.B.), a civilian Air Force mechanic received a temporary-duty assignment at Shepard Air Force Base in Wichita Falls, Texas. After returning briefly to his home in New Mexico to deal with a personal emergency, the employee was injured in an automobile accident when traveling back to his temporary duty station. *Id*. While recognizing the general rule that employees are covered "continuously" when on travel status or on a temporary-duty assignment, the Board denied coverage because the employee's diversion to New Mexico was taken for purely personal reasons. *Id*.

Next, Ms. Avery also asserts that FECA coverage would not have re-attached until her SeaTac flight intersected the most direct commercial flight path from Atlanta to Japan, an argument that, at first blush, seems laughable. However, after a careful examination of prior ECAB opinions, it is clear that the absurdity of this argument stems directly from the Board's construction of coverage with regard to traveling employees. The *Stamey* decision, cited by Ms. Avery, provides a telling example. In *Stamey*, the employee was killed in an automobile accident while traveling to a work-related meeting. 1981 WL 18679 (E.C.A.B.). *Id*. Although the employee was covered for work-related travel (including the trip in question), the employee had attended a prayer breakfast at his church prior

to departing for the meeting. *Id*. After examining a map to determine the relative situs of the

localities in question, the Board denied coverage because the employee had not yet reached the "most

direct route" from his home to the employment destination. *Id*. The Board reached a similar result in

*Bowling*, 2005 WL 857621 (E.C.A.B.). There, the employee was injured while returning to her home

from work. *Id*. Although she was covered for such travel and injured at a location that the employee

testified was her "usual route" home, the Board denied coverage because the employee had stopped at

a toy store and there appeared to be "a number of shorter, more direct routes." *Id*. Following the

peculiar logic of these cases, Ms. Avery's argument would appear to be correct: FECA's coverage

would not have re-attached to Ms. Avery until she re-gained the most direct route from Atlanta to

Japan.

On the other hand, the Court remains mindful of the *extremely* high burden at issue in this case,

and the Court is keenly aware that even a healthy dose of incredulousness does not necessarily amount

to a "certainty" that the Secretary would deny coverage. Indeed, even given the wide range of factual

circumstances involved in the aforementioned decisions, Ms. Avery's situation does not present a clear

factual fit and is, thus, easily distinguishable. Additionally, while Ms. Avery may have been far off-

course when she entered Sea/Tac airport, there is at least some reasonable connection between her

employment and her presence at the airport. Because the Court cannot say, under the totality of the

circumstances, that there is no substantial question as to coverage, the Court lacks subject matter

jurisdiction over Ms. Avery's FTCA claim.

### B.     Stay of proceedings

Where there is a substantial question regarding FECA coverage, the proper course of action

for a district court, generally, is to stay the FTCA action pending a determination by the Secretary of

Labor. *See, e.g.*, *Sheehan*, 896 F.2d at 1173; *Reep*, 557 F.2d at 208. As part of its power to control

its own docket, a court has the inherent power to stay proceedings in actions pending before it.  1A

C.J.S. Actions § 319.  Although such power should be exercised with caution, "a stay may be granted

if it is justified by circumstances which outweigh any potential harm to a party against whom it will

operate." *Id.*

Although Ms. Avery has not requested a stay, the Court is convinced that such relief is the

proper course of action at this time.  To begin with, the statutorily mandated time limitations likely bar

Ms. Avery from re-filing her claim in district court if she were to be denied at the administrative level.

Under the FTCA, a claimant must file an administrative claim with the proper government agent within

two years accrual of a claim; if denied, a claimant must then file suit within six months of the notice of

final denial.  28 U.S.C. § 2401(b).  Ms. Avery filed her administrative claim on February 28, 2006.

Because she did not receive a response within six months, deemed a denial of a plaintiff's claims under

28 U.S.C. § 2675(a), Ms. Avery's time limitation for bringing suit under the FTCA expired on

February 28, 2007, six months following the "denial" of her claim.  While the question of whether Ms.

Avery could re-file her claim in federal court with a date that relates back to the present action appears

to be an open one, the Court takes heed of the Supreme Court's admonition that the FTCA limitations

period is the embodiment of "the balance struck by Congress in the context of tort claims against the

Government; and we are not free to construe it so as to defeat its obvious purpose, which is to

encourage the prompt presentation of claims." *United States v. Kubrick*, 444, U.S. 111, 117 (1979).

Next, the harm to the government in granting a stay is negligible.  Indeed, if Ms. Avery's

FECA claim is denied at the administrative level, the worst possible outcome for the government is

that it will be forced to deal with a claim on the merits that was properly within the Court's jurisdiction

from the outset.  Finally, because question of FECA compensation is dubious, the Court is satisfied

that Ms. Avery's failure to seek an administrative resolution was due to her honest belief that her

injuries were not compensable under FECA; thus, the Court is reticent to completely jettison her

claim, especially in light of the possibility that she may be ultimately time-barred. As a result, the Court, on its own motion, stays the proceedings pending a determination of FECA coverage by the Secretary of Labor.

## IV.  CONCLUSION

It is hereby ORDERED that Defendant's Motion for Summary Judgment, Dkt. #16, is DENIED. However, the Court finds that it is without subject matter jurisdiction over Plaintiff's claim; consequentially, the Court, on its own motion, STAYS the current proceedings pending a determination of FECA coverage by the Secretary of Labor. Additionally, in light of this Order, Defendant's Motion for Relief From Mediation, Dkt. #22, is moot and will not be considered at this time.

Dated this 31st day of OCTOBER, 2007.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 10